# EXHIBIT "A-2"

FILED
8/5/2024 1:42 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

CAUSE NO. ___DC-24-11615___

| | | |
|---|---|---|
| **DAVID L. NELSON AND SAVANNAH NELSON,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **VS.** | § | ___162nd___ **JUDICIAL DISTRICT** |
| | § | |
| **FIRST BANK D/B/A FIRST BANK** | § | |
| **MORTGAGE, DEUTSCHE BANK** | § | |
| **TRUST COMPANY AMERICAS, F/K/A** | § | |
| **BANKERS TRUST COMPANY, AS** | § | |
| **TRUSTEE FOR SAXON ASSET** | § | |
| **SECURITIES TRUST 2001-2,** | § | |
| **MORTGAGE LOAN ASSET BACKED** | § | |
| **CERTIFICATES, SERIES 2001-2, AVT** | § | |
| **TITLE SERVICES, LLC AND PHH** | § | |
| **MORTGAGE CORPORATION** | § | **OF DALLAS COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiffs, DAVID L. NELSON and SAVANNAH NELSON, husband and wife, file against Defendants this original petition and application for temporary restraining order and file this temporary injunction against Defendants, FIRST BANK D/B/A FIRST BANK MORTGAGE, DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2, AVT TITLE SERVICES, LLC and PHH MORTGAGE CORPORATION.

## Jurisdiction

1. The damages sought in this suit are within the jurisdictional limits of the Court. As required by Rule 47, Texas Rules of Civil Procedure, Plaintiffs state that Plaintiffs seek monetary relief of $250,000 or less and non-monetary relief.

## Venue

2. Venue is proper in Dallas County, Texas in that all or substantial part of the events or omissions giving rise to this cause of action occurred within Dallas County pursuant to §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

3. Venue in Dallas County, Texas is mandatory pursuant to §15.011 of the Texas Civil Practice and Remedies Code in that Dallas County is that in which all or part of the property is situated.

## Plaintiffs

4. Plaintiff, DAVID L. NELSON, is an individual whose address is 1213 Sutters Way, Mesquite, Dallas County, TX 75181.

5. Plaintiff, SAVANNAH NELSON, is an individual whose address is 1213 Sutters Way, Mesquite, Dallas County, TX 75181.

## Defendants

6. Defendant, FIRST BANK D/B/A FIRST BANK MORTGAGE, is a corporation organized under the laws of the state of MO. FIRST BANK D/B/A FIRST BANK MORTGAGE is authorized to do business in Texas and may be served with process by serving CT

Corporation, its registered agent, by certified mail, return receipt requested, addressed to the registered office located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

7. This Court has jurisdiction over FIRST BANK D/B/A FIRST BANK MORTGAGE because said Defendant purposely accepted the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant.

8. Defendant, DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2, is a corporation organized under the laws of the state of NY. DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2 is authorized to do business in Texas and may be served with process by serving CT Corporation, its registered agent, by certified mail, return receipt requested, addressed to the registered office located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

9. This Court has jurisdiction over DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2 because said Defendant purposely accepted the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant.

10. Defendant, AVT TITLE SERVICES, LLC, is a limited liability company. It can be served with process by serving Brandon B. Wolf, its registered agent, by certified mail, return receipt requested, addressed to the registered office located at 14160 N. Dallas Parkway, Suite 900, Dallas, TX 75254.

11. This Court has jurisdiction over AVT TITLE SERVICES, LLC because said Defendant is a resident of Texas.

12. Defendant, PHH MORTGAGE CORPORATION, is a corporation organized under the laws of the state of FL. PHH MORTGAGE CORPORATION is authorized to do business in Texas and may be served with process by serving Corporation Service Company d/b/a CSC, its registered agent, by certified mail, return receipt requested, addressed to the registered office located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

13. This Court has jurisdiction over PHH MORTGAGE CORPORATION because said Defendant purposely accepted the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant.

### Discovery Control Plan

14. Under Texas Rule of Civil Procedure 190.3, Plaintiffs plan to conduct discovery under Level 2 and affirmatively plead this suit is not governed by the expedited actions process Rule 169 of the Texas Rules of Civil Procedure because Plaintiffs seek injunctive relief.

**Facts**

15. The Plaintiffs, David L Nelson and Savannah Nelson ,are the owners of the property located at 1213 Sutters Way, Mesquite, TX 75181 in Dallas County, Texas via a deed recorded in Dallas County, TX. (hereinafter referred to as "the Property"). A true and correct copy of the deed is attached hereto as Exhibit "A".

16. The Plaintiffs are currently living in the Property, which serves as their homestead.

17. On or about March 14, 2001, Plaintiffs executed a Deed of Trust with the Original Lender First Bank d/b/a First Bank Mortgage. A true and correct copy of the deed of trust is attached hereto as Exhibit "B".

18. On or about, January 26, 2011, Plaintiffs entered into a Loan Modification Agreement with subsequent lender, Deutsche Bank Trust Company Americas f/k/a Banker's Trust Company, as Trustee and Custodian for Saxon Mortgage Services. A true and correct copy of the loan modification agreement is attached hereto as Exhibit "C".

19. Plaintiffs suffered some financial difficulties due to the COVID-19 pandemic around 2020.

20. The Plaintiffs attempted to work with the mortgage company through a loan modification to bring the account current.

21.6.    The Plaintiffs agreed to make payments based on the loan modification terms but missed one of those payments. As a result, the bank refused to accept the payment and proceeded to dismiss the loan modification agreement and accelerate the loan causing the Plaintiffs to default on the loan.

22. On or about June 27, 2024, Defendant(s) filed Notice of Substitute Trustee Sale for the Property, which stated that the property was to be auctioned off at a non-judicial foreclosure sale on Tuesday, August 6, 2024 with the sale to being 1:00pm or not later than three hours after that time. A trust and correct copy of this notice is attached hereto as Exhibit "D".

23. On or about July 30, 2024, I entered into an agreement with Mentor Capital, LLC (hereinafter referred to as "the Seller") to purchase the Property. A true and correct copy of the agreement is attached hereto as Exhibit "E".

24. Also, on or about July 30, 2024, Mentor Capital, LLC filed a Memorandum of Agreement for Purchase and Sale of the Property. A true and correct copy of the Memorandum is attached hereto as Exhibit "F".

25. Despite the agreement, PHH Mortgage Corporation, Mortgage Servicer, on behalf of Deutsche Bank Trust Company Americas, F/K/A Bankers Trust Company, As Trustee for Saxon Asset Securities Trust 2001-2, Mortgage Loan Asset Backed Certificates, Series 2001-2 (hereinafter referred to as "the Lender") has maintained their intent to proceed with the foreclosure sale of the Property to occur on Tuesday, August 6, 2024 on or about 1:00pm.

26. The Plaintiffs have made several efforts to resolve the default and have been in communication with the Lender regarding the imminent foreclosure. Nevertheless, the Lender has refused to halt the foreclosure sale despite the ongoing executed purchase and Plaintiffs' efforts to sell the Property, fully satisfy the debt, and recover the equity from the property.

27. The scheduled foreclosure sale will cause immediate and irreparable harm to Plaintiffs as they will lose their home and the substantial equity in the Property. In addition, their credit will be damaged as a result of the foreclosure.

28. Plaintiffs are seeking an ex parte Temporary Restraining Order to prevent the foreclosure sale scheduled for Tuesday, August 6, 2024. This will allow Plaintiffs the necessary time to complete the sale of the Property to the bona fide buyer, fully satisfy the debt, and recover their equity from the Property.

29. There is no adequate remedy at law to prevent the irreparable harm Plaintiffs will suffer if the foreclosure sale is not halted. Monetary damages cannot compensate for the loss of their home and the equity therein, as well as, damage to their credit.

30. The balance of equities favors the issuance of the Temporary Restraining Order as the harm to Plaintiffs far outweighs any potential harm to the Lender. Moreover, the issuance of the Temporary Restraining Order will preserve the status quo and allow the pending sale to proceed, thereby resolving the default, and allowing Plaintiffs to recover their equity in the Property.

### Cause of Action – Equitable Right of Redemption

31. Plaintiffs hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

32. To properly state a claim for equitable right of redemption, a plaintiff must show he(she): (1) has an equitable or legal right to the property; (2) based on that interest in the property, would suffer a loss from the foreclosure, and (3) is "ready, able or willing to redeem the properties in controversy by paying the amount off of valid and subsisting liens to which the properties [are} subject." Scott v. Dorothy B. Schneider Estate Trust, 783 S.W.2d 26, 28 (Tex. App.-Austin, 1990 no writ) (quoting Houston v. Shear, 210 S.W. 976, 981 (Tex.App.-Austin 1919, writ dism'd)).

33. Plaintiffs are the legal owner of the property locate 1213 Sutters Way, Mesquite, TX 75181.

34. As legal owner of the property, Plaintiffs would suffer a loss of ownership and the right to possession and control of the property if foreclosure takes place.

35. Plaintiffs have a significant amount of equity that they would loss should a foreclosure take place by the Defendants and would suffer significant damage to their credit.

36. Plaintiffs would suffer immediate and irreparable harm if the foreclosure proceeds.

37. Plaintiffs have taken reasonable action and demonstrated the ability and intent to pay off the loan entirely, by entering into a purchase agreement with Mentor Capital, LLC a bona fide purchaser/buyer of the property with the necessary funds to satisfy the debt owed.

38. Defendants have filed to allow Plaintiffs an adequate opportunity and/or time to cure the default and fully satisfy the debt and avoid foreclosure of the property.

39. Plaintiffs are ready, able, or willing to redeem the property in controversy by paying of the amount of any valid and subsisting liens to which the property is subject.

### Application for Temporary Restraining Order

40. Plaintiffs hereby adopts by reference each and every paragraph above as if fully and completely set forth herein.

41. Plaintiffs ask the Court for a temporary restraining order that enjoins Defendants from proceeding with the trustee sale/foreclosure sale of the Plaintiffs" Property scheduled on August 6, 2024 at or after 1:00pm. Unless the Defendants and their agents, attorneys, employees, officers, and successors and assigns are enjoined, Plaintiffs will suffer probable harm

which is imminent and irreparable. More specifically, if not enjoined, Defendants will conduct the foreclosure sale on the Property scheduled for August 6, 202 at 1:00 pm. The foreclosure sale must be enjoined because the evidence elicited herein by this verified application is sufficient to show immediate and irreparable injury, loss or damage to Plaintiffs. Plaintiffs verified evidence has shown a probable right to an injunction and a temporary restraining order on all causes of action.

42. The intended foreclosure sale by the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs have no other plain, speedy, or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to the Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' actions are restrained and now enjoined because real property is inherently unique, and it will be impossible for Plaintiffs to determine the precise amount that will be suffered once the foreclosure sale takes place.

43. Furthermore, Defendants cannot be served in time as the trustee sale date is imminent, specifically, August 6, 2024 at 1:00 pm, which is less than 24 hours from the time of this filing. The harm to Plaintiffs is imminent because Plaintiffs' property is at immediate risk or re-sale, alteration, or destruction whereupon Plaintiffs would lose the ability to recover the property, loss their equity in the property, and suffer further damage to their credit should the Defendants prevail in this action and not be enjoined from proceeding with the foreclosure sale on August 6, 2024.

44. Plaintiffs are likely to recover from Defendants after a trial on the merits because Plaintiffs have an equitable right of redemption of to Property and are willing and ready to

exercise this right.  Plaintiffs simply need more time to complete the sale of the Property to bona fide purchaser, Mentor Capital LLC.

45.  Plaintiff further requests that, upon trial on the merits, Defendants be temporarily and/or permanently enjoined from the same acts listed above.

46.  The granting of the relief requested is not inconsistent with public policy considerations.

### Bond

47.  Plaintiffs are willing to post a reasonable bond for the temporary restraining order and request the Court to set the reasonable bond.

### Request for Temporary Injunction

48.  Plaintiffs ask the Court to set this application for temporary injunction for hearing and to issue a temporary injunction against Defendants after hearing.

### Initial Disclosures

49.  As provided in Rule 194, Texas Rules of Civil Procedure, required Initial Disclosures of all items listed in Rule 194.2 must be made at or within 30 days after the filing of the first answer unless a different time is set by the parties' agreement or court order.

50.  Plaintiffs ask the Court to keep the requirement of Initial Disclosures to be made within 30 days.

## Conditions Precedent

51. Plaintiffs confirm that all conditions precedent to Plaintiffs' claim for relief have been performed or have occurred.

## Prayer

WHEREFORE, Plaintiffs pray that the Court will cite Defendants to appear and answer and that Plaintiffs be awarded a judgment against Defendants, on final trial, as follows:

Temporary restraining order and temporary injunction of the Defendants and their agents, attorneys, employees, officers, and successors and assigns that enjoins Defendants from proceeding with and/or conducting the trustee/foreclosure sale of Plaintiffs' the Property located at 1213 Sutters Way, Mesquite, TX  75181, scheduled for August 6, 2024 at 1:00 pm.

Plaintiffs further pray that the Court will grant actual damages, prejudgment and postjudgment interest, all costs of Court, and for all other relief to which Plaintiffs are entitled both in equity and law.

Respectfully submitted,


JC Brooks Law Firm PLLC
1617 Park Place Avenue
Suite 110
Fort Worth, TX 76110

/s/ Jerry C. Brooks
Jerry C. Brooks
Attorney for DAVID L. NELSON and SAVANNAH NELSON
Bar no: 24055217
Phone: (877) 244-3529
Fax: (877) 244-3529
Email: jerry@jcblawfirm.com

## VERIFICATION

STATE OF TEXAS                          §

COUNTY OF DALLAS                        §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared the person known by me to be Jerry C. Brooks who, after being by me duly sworn, testified as follows:

"My name is Jerry C. Brooks, I am over 18 years of age, and I am competent to testify to these matters. I have personal knowledge of all facts stated in the above Original Petition and Application for Temporary Restraining Order and all such facts are true and correct."

_Jerry C. Brooks_
Jerry C. Brooks, Affiant

SUBSCRIBED AND SWORN TO before me on _August 5th 2024_

NORMA LIZBETH GUZMAN
Notary Public, State of Texas
Comm. Expires 02-28-2027
Notary ID 131911092

_Notary Public_

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR EX PARTE TRO

**STATE OF TEXAS**                    §

**COUNTY OF** _Dallas_                §

BEFORE ME, the undersigned authority, on this day personally appeared **DAVID L. NELSON**, who, being duly sworn, deposed and said:

**1.** My name is David L. Nelson. I am over the age of 18, of sound mind, and capable of making this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

**2.** I am the owner of the property located at **1213 Sutters Way, Mesquite, TX 75181** in Dallas County, Texas (hereinafter referred to as "the Property").

**3.** On or about July 30, 2024, I entered into an agreement with **Mentor Capital, LLC** (hereinafter referred to as "the Seller") to purchase the Property. A true and correct copy of the agreement is attached hereto as Exhibit "A".

**4.** Despite the agreement, **PHH Mortgage Corporation, Mortgage Servicer, on behalf of Deutsche Bank Trust Company Americas, F/K/A Bankers Trust Company, As Trustee for Saxon Asset Securities Trust 2001-2, Mortgage Loan Asset Backed Certificates, Series 2001-2** (hereinafter referred to as "the Lender") has scheduled a foreclosure sale of the Property to occur on **August 6, 2024**.

**5.** I have made several efforts to resolve the default and have been in communication with the Lender regarding the imminent foreclosure. Nevertheless, the Lender has refused to halt the foreclosure sale despite the ongoing negotiations and my efforts to sell the Property and recover the equity.

**6.** The scheduled foreclosure sale will cause immediate and irreparable harm to me as I will lose my home and the substantial equity I have in the Property.

**7.** I am seeking an ex parte Temporary Restraining Order to prevent the foreclosure sale scheduled for **Tuesday, August 6, 2024**. This will allow me the necessary time to complete the sale of the Property to the Seller and recover my equity.

**8.** There is no adequate remedy at law to prevent the irreparable harm I will suffer if the foreclosure sale is not halted. Monetary damages cannot compensate for the loss of my home and the equity therein.

**9.** The balance of equities favors the issuance of the Temporary Restraining Order as the harm to me far outweighs any potential harm to the Lender. Moreover, the issuance

of the Temporary Restraining Order will preserve the status quo and allow the pending sale to proceed, thereby resolving the default.

**10.** WHEREFORE, I respectfully request that this Court grant my application for an ex parte Temporary Restraining Order to prevent the foreclosure sale scheduled for **Tuesday, August 6, 2024,** and for such other and further relief to which I may be entitled.

FURTHER AFFIANT SAYETH NOT.

**DAVID L. NELSON, AFFIANT**

**SUBSCRIBED AND SWORN TO BEFORE ME**, the undersigned authority, on this _1st_ day of _August_ , 2024, by _David L. Nelson_ .

Notary Public in and for the
State of Texas

My Commission Expires: _09-09-2027_

NICHOLAS HASSELSCHWERT
Notary ID #132164138
My Commission Expires
September 9, 2027

Page 2 of 2

01100371 KC

60257005

**1320259**

03/21/01    2563606    $11.00
Deed

# WARRANTY DEED WITH VENDOR'S LIEN

### (with Second Lien)

STATE OF **TEXAS**

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF **DALLAS**

Date: **MARCH 14, 2001**

That **DUNG H. CAO AND WIFE, NHUNG H. CAO**

hereinafter called "Grantor" (whether one or more), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Grantor paid by
**DAVID L. NELSON, SR., A MARRIED PERSON**

hereinafter called "Grantee" (whether one or more), the receipt of which is hereby acknowledged and confessed, and the further consideration of the execution and delivery by Grantee of one certain Promissory Note in the principal sum of $  **114,750.00** , of even date herewith, payable to the order of
**FIRST BANK D/B/A FIRST BANK MORTGAGE**
hereinafter called "Mortgagee", bearing interest at the rate therein provided; said note containing the usual reasonable attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien and superior title retained ≟rein in favor of said Mortgagee, and being also secured by a Deed of Trust of even date herewith from Grantee to
**DENNIS P. SCHWARTZ** , Trustee; and

WHEREAS, Mortgagee has, at the special instance and request of Grantee, paid to Grantor $ **114,750.00** of the purchase price of the property hereinafter described, as evidenced by the above-described Note, said Vendor's Lien and Deed of Trust Lien against said property securing the payment of said Note are hereby assigned, transferred and delivered to Mortgagee. Grantor hereby conveying to said Mortgagee the said superior title to said property, subrogating said Mortgagee to all the rights and remedies of Grantor in the premises by virtue of said liens; and

For further consideration of the execution and delivery by Grantee of that one certain Second Lien Promissory Note, of even date herewith, in the principal sum of $ **13,500.00** , payable to the order of
**FIRST BANK D/B/A FIRST BANK MORTGAGE**
and bearing interest at the rate therein specified, said Note being secured by a second and inferior Vendor's Lien and Superior Title herein and hereby expressly retained and reserved upon the property herein described and conveyed and additionally secured by a Second Lien Deed of Trust thereon, of even date, to
**DENNIS P. SCHWARTZ**
Trustee.

Grantor has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the following described property, to-wit:

**BEING LOT 9 IN BLOCK 1 OF CREEK CROSSING ESTATES NO. 5, PHASE II, AN ADDITION TO THE CITY OF MESQUITE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME 93133, PAGE 5689 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.**

TO HAVE AND TO HOLD the above-described premises, together with all and singular, the rights and appurtenances thereunto in anywise belonging unto said Grantee, his heirs and assigns, forever. And Grantor does hereby bind himself, his heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Taxes for the current year have been prorated and their payment is assumed by Grantee.

This conveyance is made subject to any and all valid and subsisting restrictions, easements, rights of way, reservations, maintenance charges together with any lien securing said maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the above-described property as shown by the records of the County Clerk of said County.

**200[10]56 07067**

60257005

The use of any pronoun herein to refer to Grantor or Grantee shall be deemed a proper reference even though Grantor and/or Grantee may be an individual (either male or female), a corporation, a partnership or a group of two or more individuals, corporations and/or partnerships, and when this Deed is executed by or to a corporation, or trustee, the words "heirs, executors and administrators" or "heirs and assigns" shall, with respect to such corporation or trustee, be construed to mean "successors and assigns".

It is expressly agreed that the Vendor's Lien is retained in favor of the payee of said Note against the above-described property, premises and improvements, until said Note and all interest thereof shall have been fully paid according to the terms thereof, when this Deed shall become absolute.

EXECUTED this 14TH day of ___MARCH___ , 2001 .

_____
DUNG H. CAO

NHUNG H CAO by Jung
_____
NHUNG H. CAO , BY AND THROUGH HER
DULY AUTHORIZED AGENT AND ATTORNEY-IN-FACT,
DUNG H. CAO

STATE OF ___TEXAS___

County of ___DALLAS___

Before me, the undersigned, on this day personally appeared
DUNG H. CAO AND NHUNG H. CAO XXXXXX , INDIVIDUALLY AND AS AGENT AND ATTORNEY-IN-FACT FOR
NHUNG H. CAO

known to me (or proved to me on the oath of _____
or through _____ ) to be the person(s) whose name(s) ___is___ subscribed to
the foregoing instrument and acknowledged to me that ___he___ executed the same for the purposes and consideration therein
expressed., and on behalf of NHUNG H. CAO.
Given under my hand and seal of office this ___14TH___ day of MARCH ___2001___ .

(Seal)

K L CLOUD
Notary Public
State of Texas
Comm Expires 5-14-2001

Notary Public

THE STATE OF TEXAS  )
COUNTY OF DALLAS  )
This instrument was acknowledged before me on the 14TH day of MARCH, 2001, by
DUNG H. CAO, INDIVIDUALLY AND AS AGENT AND ATTORNEY-IN-FACT FOR NHUNG H. CAO,
AND ON HER BEHALF.

K L CLOUD
Notary Public
State of Texas
Comm Expires 5-14-2001

NOTARY PUBLIC, STATE OF TEXAS.

RETURN TO GRANTEE:
DAVID L. NELSON, SR.
1213 SUTTERS WAY
MESQUITE, TEXAS 75181

2001056 07068

20010056 07069

FILED

01 MAR 20 PM 2:47

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



MAR 21 2001



COUNTY CLERK, Dallas County, Texas

01100371 FC

Return To:
FIRST BANK D/B/A FIRST BANK MORTGAGE

1370 S. Valley Vista Dr. #100
Diamond Bar, California 91765

Prepared By:
Dennis P. Schwartz
Schwartz & Associates
1446 Heritage Drive
McKinney, Texas 75069
(972)562-1966

**1320260**

| 03/21/01 | 2563607 | 443.00 |
| Deed of Trust | | |

*[Space Above This Line For Recording Data]*

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 14, 2001
together with all Riders to this document.
(B) "Borrower" is
DAVID L. NELSON, SR., A MARRIED PERSON

JOINED HEREIN BY HIS SPOUSE, SAVANNAH NELSON

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
FIRST BANK D/B/A FIRST BANK MORTGAGE

Lender is a Corporation
organized and existing under the laws of the State of California

60257005

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1-01

Page 1 of 16

-6(TX) (0005)          VMP MORTGAGE FORMS - (800)521-7291          Initials: *S.N.*

2001056 07070

Lender's address is
**1370 S. Valley Vista Dr. #100, Diamond Bar, California 91765**
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee" is DENNIS P. SCHWARTZ**
Trustee's address is
**1446 Heritage Drive, McKinney, Texas 75069**
**(E) "Note"** means the promissory note signed by Borrower and dated MARCH 14, 2001
The Note states that Borrower owes Lender
**ONE HUNDRED FOURTEEN THOUSAND SEVEN HUNDRED FIFTY AND NO/100 ----------**

Dollars
**(U.S. $114,750.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than APRIL 1, 2016
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | |

☒ Other(s) [specify] PREPAYMENT PENALTY OPTION RIDER

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

60257005

-6H(TX) (0008)    Page 2 of 16    Initials _S.N._    Form 3044  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of  **DALLAS**                                   :

[Name of Recording Jurisdiction]

BEING LOT 9 IN BLOCK 1 OF CREEK CROSSING ESTATES NO. 5, PHASE II, AN ADDITION TO THE CITY OF MESQUITE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME 93133, PAGE 5689 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

Parcel ID Number:

1213 SUTTERS WAY, MESQUITE                                  which currently has the address of
                                                                        [Street, City]
Texas    75181        [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

60257005

-6(TX) (0005)            Page 3 of 16            Initials S.N.            Form 3044   1/01

076056 07072

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

60257005

-6(TX) (0005)                    Page 4 of 15          S. N.                Form 3044   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

60257005

-6(TX) (0005)        Page 5 of 16     Initials S.N.     Form 3044  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

60257005

-6(TX) (0005)                    Page 6 of 16          Initials: S.N          Form 3044   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

60257005

-6(TX) (0005)　　　　　　Page 7 of 16　　　Initials S.N.　　　Form 3044  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

60257005

-6(TX) (0005)                  Page 8 of 16          Initials S. N.          Form 3044  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(TX) (0005)                         Page 9 of 16                    S. N.

60257005

Form 3044   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

60257005

-6(TX) (0005)         Page 10 of 16         Initials S.N.         Form 3044  1/01

2021056 07079

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

60257005

-6(TX) (0005)    Page 11 of 16    Initials S.N.    Form 3044   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

60257005

-6(TX) (0008)    Page 12 of 16    initials S.N.    Form 3044  1/01

0056 07081

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

60257005

S.N.

-6(TX) (0008)                    Page 13 of 16                    Form 3044   1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** Check box as applicable:

[X] **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

60257005

Initials *S.N.*

-6(TX) (0005)          Page 14 of 16          Form 3044   1/01

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     DAVID L. NELSON, SR.         -Borrower

_____     _____ (Seal)
                                     SAVANNAH NELSON              -Borrower

_____ (Seal)         _____ (Seal)
                -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                -Borrower                                        -Borrower

_____ (Seal)         _____ (Seal)
                -Borrower                                        -Borrower

60257005

-6(TX) (0008)              Page 16 of 16              Form 3044   1/01

2001056 07084

STATE OF <u>TEXAS</u> _____
County of <u>DALLAS</u> _____

Before me _____ on this day personally appeared
DAVID L. NELSON, SR. and SAVANNAH NELSON

known to me (or proved to me on the oath of _____Driver's License_____ /and
or through _____ ) to be the person(s) whose name(s) is/are subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this ___14th___ day of MARCH _____, 2001 ___.

(Seal)

_____
Notary Public

K. L. CLOUD
Notary Public
State of Texas
Comm. Expires 5-14-2001

My Commission Expires: _____

**60257005**

-6(TX) (0005)                    Page 16 of 16                    Form 3044  1/01

THE STATE OF TEXAS    )
COUNTY OF DALLAS      )
     This instrument was acknowledged before me on the 14th day of MARCH, 2001, by
DAVID L. NELSON, SR. AND SAVANNAH NELSON

_____
NOTARY PUBLIC, STATE OF TEXAS

K. L. CLOUD
Notary Public
State of Texas
Comm. Expires 5-14-2001

056 07085

60257005

# BALLOON RIDER TO SECURITY INSTRUMENT

For valuable consideration, receipt of which is hereby acknowledged, the undersigned agree that certain Security Instrument (Deed of Trust/Mortgage/Security Deed) of even date to which this Rider is attached shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Security Instrument securing same:

**BALLOON PAYMENT**

The loan is payable at the end of  **15**  years. You must repay the entire principal balance of the loan and the unpaid interest then due. You have the right to refinance this amount at the time it is due at the lender's then prevailing rates for such type of credit. You must meet all of the Lender's normal credit standards. The right to refinance with the original Lender shall not apply if the Lender is not extending such credit at the time your balloon payment is due.

You may also choose to make payment at maturity out of other assets you own, or you may find another lender willing to lend you the money at prevailing market rates, which may be considerably higher or lower than the interest rate on this loan. If you refinance this loan at maturity, whether through the original lender or with another lender, you may have to pay some or all closing costs normally associated with the new loan.

Date:  **3/14/2001**

_____ (Seal)
DAVID L. NELSON, SR.                  -Borrower

_____ (Seal)
SAVANNAH NELSON                       -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

JBALN01R (01/01)

056 07086

60257005

# PREPAYMENT PENALTY OPTION RIDER

For value received, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into that certain Mortgage/Deed of Trust/Security Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to: FIRST BANK D/B/A FIRST BANK MORTGAGE

("Lender"), as beneficiary/grantee, and also into that certain promissory note (the "Note") of even date herewith executed by Borrower in favor of Lender. To the extent that the provisions of this Prepayment Penalty Option Rider (the "Rider") are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

Section **4**   of the Note is amended to read as follows

" **4** . **BORROWER'S RIGHT TO PREPAY**

If within **FIVE**        **YEARS**     from the date of the execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state law. The prepayment charge will be equal to six (6) months advanced interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. Notwithstanding the foregoing, I will not be required to pay a prepayment charge to the Note Holder in connection with any prepayment charge made if the current interest rate is greater than either twelve percent (12%) for owner occupied property, or ten percent (10%) for non-owner occupied property. In no event will such a charge be made if it violates state or federal law."

All other paragraphs and provisions respecting the prepayment charge, contained within Section **4**   of the Note will remain the same.

IN WITNESS WHEREOF, Borrower has executed this Prepayment Penalty Option Rider.

Date:   3/14/2001

_____ (Seal)          _____ (Seal)
DAVID L. NELSON, SR.          -Borrower          SAVANNAH NELSON          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

JBYLPPTB (11/98)

0056 07087

2001056 07088

FILED

01 MAR 20 PM 2:47

EARL BULLOCK
COUNTY CLERK
DALLAS COUNTY



MAR 21 2001

Exhibit C



201100076492
MOD  1/5

03/24/2011 03:46:42 PM

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
2305 Ridge Road, Suite 106
Rockwall, Texas 75087

_____[Space Above This Line For Recording Data]_____
Loan No.: 11374430

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AND INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective this 26th  day of   January, 2011                ,
between  David L. Nelson, Sr., a married person joined herein by his spouse, Savannah Nelson

("Borrower/Grantor")
and Deutsche Bank Trust Company Americas formerly known as Banker's Trust Company, as Trustee and Custodian by: Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services, Inc. as its attorney-in-fact

("Lender/Grantee"),
amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), the Note and any riders thereto made by Borrower to        First Bank d/b/a First Bank Mortgage

(the "Original Lender") dated
March 14th, 2001            and recorded in Book/Liber  056              , Page 07070              , Instrument No.
1320260            , of the Official     Records of Dallas                    County, Texas             ,
and (2) the Note in the original principal sum of U.S. $   114,750.00         , bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at   1213 Sutters Way, Mesquite, Texas 75181                    .

_____
TEXAS LOAN MODIFICATION AGREEMENT                                                    Page 1 of 5
Step Rate–Fixed                                                                       Recording
                                                                                     Requested

FEB 8 8 11

Loan No.: 11374430

the real property described being set forth as follows:

BEING LOT 9 IN BLOCK 1 OF CREEK CROSSING ESTATES NO. 5, PHASE II, AN ADDITION TO THE CITY OF MESQUITE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN VOLUME 93133, PAGE 5689 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

In consideration of the agreements herein, and other good and valuable consideration, Saxon, on behalf of and as duly authorized agent of Note Holder, and Borrower hereby agree to modify the terms of the Note and Security Instrument as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. **Advances by Saxon Mortgage Services, Inc. ("Saxon").**  As of June 1st, 2007, Borrower acknowledges that the existing principal balance payable under the Note and Security Instrument is/was $ 110,562.20 which accrued interest at a yearly rate of 11.150%. After application of the accrued but unpaid interest due on the July 1st, 2007 through March 1st, 2011 payments, at the interest rate of 11.150%, $88,964.06 will be added to the indebtedness resulting in a new principal balance of $199,526.26 (the "Unpaid Principal Balance"). The Unpaid Principal Balance will accrue interest initially at the interest rate of 3.000%.

2. **Interest Rate.**  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at an annual interest rate, and Borrower will pay monthly payments of principal and interest in U.S. dollars (which does not include any required escrow amounts), in accordance with the following schedule:

| | INTEREST RATE | INTEREST RATE CHANGE DATE | PAYMENT DUE DATE | MONTHLY PRINCIPAL & INTEREST PAYMENT |
|---|---|---|---|---|
| *prior to recast* | 11.150% | 06/01/2007 | 07/01/2007 | $1,105.82 |
| | 3.000% | 03/01/2011 | 04/01/2011 | $1,103.21 |
| | 6.000% | 03/01/2016 | 04/01/2016 | $1,349.38 |
| | N/A | N/A | N/A | $N/A |

THE MONTHLY PRINCIPAL AND INTEREST PAYMENT WILL REMAIN $1,349.38 UNTIL THE LOAN IS PAID IN FULL.

3. **Maturity Date.**  The Borrower promises to make monthly payments of principal and interest under the terms herein until Principal and Interest are paid in full. If on   April 1st, 2031                (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay those amounts in full on the Maturity Date. The Borrower will make such payments at Saxon Mortgage Services, Inc., 4708 Mercantile Drive North, Fort Worth, Texas 76137-3605 or at such other place as the Lender may require.

Loan No.: 11374430

4. **Renewal and Extension.** The lien and security interest secured by this Agreement is a "written renewal and extension" as provided by the applicable laws of this state. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified, and extended hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Borrower hereby expressly waives the benefit of any and all statutes of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

5. **Covenants and Agreements of Borrower.** Except as otherwise modified herein, the Borrower will comply with all other covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument. As further inducement to Saxon to enter into this Agreement, Borrower represents and warrants, that since the date of the Note: (a) Borrower has incurred no material adverse change in financial position; (b) Borrower has experienced no changes in employment (other than as have fully disclosed to Saxon) and no changes to the occupancy status of the Property have occurred; and (c) there have been no changes in ownership to the Property; nor have any disputes arisen as to ownership of the Property, or the survey boundaries thereof. Borrower covenants to execute promptly any and all additional and corrected documents as may reasonably be required to carry out the intent of this Agreement.

6. **No Release or Satisfaction.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Note and Security Instrument.

7. **No Oral Agreements. THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Loan No.: 11374430

_2-4-11_
Date

_02-04-11_
Date

_____
Date

_____
Date

_____ (Seal)
David L. Nelson, Sr.                    —Borrower

_____ (Seal)
Savannah Nelson                         —Borrower

_____ (Seal)
                                        —Borrower

_____ (Seal)
                                        —Borrower


## BORROWER ACKNOWLEDGMENT

State of    Texas                §
                                 §
County of  Dallas                §

Before me, a Notary Public, on this day personally appeared David L. Nelson, Sr. and Savannah Nelson

known to me or proved to me on the oath of _David L Nelson / Savannah Nelson_  or through _TX DL_ ,
*[description of identity card or other document]* to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office this _04_ day of _February_ A.D. _2011_

(Seal)

VICTORIA ESPERANZA CORDOBA
My Commission Expires
August 26, 2014

_Victoria Esperanza Cordoba_
Notary Public, State of _Texas / Texas_

My Commission Expires: _August 26, 2014_
Veronica Esperanza Cordoba

ACKNOWLEDGMENT (TEXAS)                                                   Page 4 of 5

Loan No.: 11374430

Deutsche Bank Trust Company Americas
formerly known as Banker's Trust Company,—Lender
as Trustee and Custodian by: Saxon
Mortgage Services, Inc. f/k/a Meritech
Mortgage Services, Inc. as its attorney-in-
fact

2/16/11
-Date

By: _____
Rebecca Silva

Its: _____
AVP

### LENDER ACKNOWLEDGMENT

State of    Texas            §
                            §
County of    Tarrant         §

This instrument was acknowledged before me on February 16, 2011 [date], by
Rebecca Silva [name of officer], AVP
[title of officer] of Deutsche Bank Trust Company Americas formerly known as Banker's Trust Company, as
Trustee and Custodian by: Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services, Inc. as its attorney-in-
fact

on behalf of said entity.

VERONICA CHAVEZ
Notary Public,
State of Texas
Comm. Exp. 07-23-14

(Seal)

Notary Public, State of _____ Tx _____
My Commission Expires: 7-23-14
Veronica Chavez

ACKNOWLEDGMENT (TEXAS)                                    Page 5 of 5



Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
03/24/2011 03:46:42 PM
$32.00

201100076492

Exhibit D

TS No.: 2023-01622-TX
23-000821-673

FILED
2024 JUN 27 PM 1:00
JOHN F. WARREN
COUNTY CLERK
COUNTY

## Notice of [Substitute] Trustee Sale

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

**1. Date, Time and Place of Sale.**

**Date:**   08/06/2024

**Time:**   The sale will begin at 01:00 PM or not later than three hours after that time

**Place:**   Dallas County, Texas at the following location: **NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET OR AS DESIGNATED BY THE COUNTY COMMISSIONERS OFFICE PURSUANT TO SECTION 51.002 OF THE TEXAS PROPERTY CODE AS THE PLACE WHERE FORECLOSURE SALES ARE TO TAKE PLACE OR AS DESIGNATED BY THE COUNTY COMMISSIONERS**

**Property Address:**   1213 SUTTERS WAY, MESQUITE, TX 75181

**2. Terms of Sale:** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Any conveyance of the property is subject to all matters of record affecting the property.

**3. Instrument to be Foreclosed:** The instrument to be foreclosed is the Deed of Trust or Contract Lien dated 03/14/2001 and recorded 03/21/2001 in Book 2001056 Page 7070 Document 1320260 , real property records of Dallas County, Texas, with DAVID L. NELSON, SR., A MARRIED PERSON JOINED HEREIN BY HIS SPOUSE, SAVANNAH NELSON grantor(s) and FIRST BANK D/B/A FIRST BANK MORTGAGE as Lender, DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2 as Beneficiary.

**4. Appointment of Substitute Trustee:** In accordance with Texas Property Code Sec. 51.0076, the undersigned authorized agent for the mortgage servicer has named and appointed, and by these presents does name and appoint AVT Title Services, LLC, located at 5177 Richmond Avenue Suite 1230, Houston, TX 77056, Substitute Trustee to act under and by virtue of said Deed of Trust.

**5. Obligation Secured:** Deed of Trust or Contract Lien executed by **DAVID L. NELSON, SR., A MARRIED PERSON JOINED HEREIN BY HIS SPOUSE, SAVANNAH NELSON,** securing the payment of the indebtedness in the original principal amount of **$114,750.00,** and obligations therein described including but not limited to the promissory note; and all modifications, renewals and extensions of the promissory note. **DEUTSCHE BANK TRUST COMPANY AMERICAS, F/K/A BANKERS TRUST COMPANY, AS TRUSTEE FOR SAXON ASSET SECURITIES TRUST 2001-2, MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES 2001-2** is the current mortgagee of the note and deed of trust or contract lien.

TS No.: 2023-01622-TX
23-000821-673

## Notice of [Substitute] Trustee Sale

**6. Default:** A default has occurred in the payment of indebtedness, and the same is now wholly due, and the owner and holder has requested to sell said property to satisfy said indebtedness.

**7. Property to be sold:** The property to be sold is described as follows:

**BEING LOT 9 IN BLOCK 1 OF CREEK CROSSING ESTATES NO. 5, PHASE II, AN ADDITION TO THE CITY OF MESQUITE, DALLAS COUNTY, TEXAS. ACCORDING TO THE PLAT RECORDED IN VOLUME 93133. PAGE 5689 OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.**

**8. Mortgage Servicer Information:** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the property referenced above. **PHH Mortgage Corporation,** as Mortgage Servicer, is representing the current mortgagee, whose address is:

**C/O PHH Mortgage Corporation**

**PO BOX 24605**
**West Palm Beach, FL 33416-4605**

**Phone:  877-744-2506**

TS No.: 2023-01622-TX
23-000821-673

## Notice of [Substitute] Trustee Sale

**9. Limitation of Damages:** If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's attorney.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**Date: 06/25/2024**

Mark Bombick – Attorney or Authorized Agent of The Mortgagee or Mortgage Servicer

C/O Power Default Services, Inc.
7730 Market Center Ave. Suite 100
El Paso, TX 79912
Telephone: 855-427-2204
Fax: 866-960-8298

For additional sale information visit: www.realtybid.com/texas or (877) 518-5700

**POWER DEFAULT SERVICES, INC. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Certificate of Posting

I am **Donna Stockman** _____ whose address is c/o AVT Title Services, LLC, 5177 Richmond Avenue, Suite 1230, Houston, TX 77056. I declare under penalty of perjury that on **06/27/2024** _____ I filed this Notice of Foreclosure Sale at the office of the Dallas County Clerk and caused it to be posted at the location directed by the Dallas County Commissioners Court.

Exhibit E



**MENTOR CAPITAL, LLC**
**Sale and Purchase Agreement**

 David L. Nelson and / or nominee, as Seller and Mentor Capital, LLC. and /or assigns, as Buyer, hereby agree that the Seller shall sell, and the Buyer shall buy the following described property UPON THE TERMS AND CONDITIONS HEREINAFTER SET FORTH.

1. PROPERTY ADDRESS: _1213 Sutters Way, Mesquite, TX 75181_____,

Legal Description: Being Lot 9 In Block 1 Of Creek Crossing Estates No. 5, Phase 11, An Addition to The City of Mesquite, Dallas County, Texas, According to The Plat Recorded in Volume 93133, Page 5689 of The Map Records of Dallas County, Texas.

2. CONSIDERATION: (See paragraph 14)  Make attempts to halt the foreclosure_____

TOTAL SALES PRICE: (See paragraph 12, 13) $___291,301_____ and/or transfer by

Subject to of the underlying note owed to: _____Current Lender_____.

3. DEFAULT OF BUYER: If BUYER: If the buyer fails to perform any of the covenants of this contract, all money paid pursuant to this contract by Buyer as aforesaid shall be retained by or for the account of the Seller as consideration for the execution of this contract and liquidated damages and in full settlement of any claims for damages.

4. DEFAULT BY SELLER: If the Seller fails to perform any of the covenants of this contract, the aforesaid money paid by the Buyer, at the option of the BUYER, shall be returned to the Buyer on demand.

5. SELLER WARRANTS that this interest in the real property is marketable and insurable. If a title examination reveals that it is not marketable and insurable, then Seller agrees to exercise diligent efforts to render his interest marketable and insurable.

6. THE PARTIES HEREIN AGREE that this transaction shall be closed not later than
 _11/06/2024_____.  A transactional closing of transfer of ownership of said Real Estate Property is considered Final.

7. BUYER HAS EXAMINED the property to Buyer's complete satisfaction and knows its condition. In purchasing the property, Buyer relies only on Buyer's examination and judgment, not on the representation of any other personas to value, future value, condition, size, age, use, or any other matter. Buyer acknowledges that in selling the property Seller(s) makes no warranties other than title.

8. AS INVESTORS: We buy and sell properties for profit, and the arrangement that we are making is with the intention of making a profit.

9. PLACE OF CLOSING: Buyer may close at the location of their choice.

10. TIME IS OF THE ESSENCE: Time is of the essence of this Sale and Purchase Agreement.

11. OTHER TERMS AND CONDITIONS:

A. Property is purchased AS IS with a 10-day option period. (Buyer reserves the right to inspect property and terminate the contract)

B. Sellers must vacate property by: _09/06/2024_

C. A Carry over rent will be charged if seller(s). refuses to vacate property. Considering rate will be set at _2,000._ due on the first of this month. Plus $200 dollars after the 3ʳᵈ of the month plus legal and court fees

D. Buyer pays all closing costs.

12. FULL UNDERSTANDING OF PURCHASE PRICE: The undersigned seller/s understand that if the payoffs, other encumbrances by liens, taxes, bank or legal fees exceed the purchase price, the buyer reserves the right to withdraw from the transaction, or the buyer reserves the right to continue to finalize the sale of the transaction for the higher than listed sale price above. Whereas the sellers may not be entitled to any profit from the sale of the property

Sellers Initials: _____

13. SELLERS ACKNOWLEDGEMENT: Sellers also agree that for the buyer to help protect the property and sellers from any loss of property and/or credit worthiness, sellers authorize buyer to sell, transfer, assign, sub to and/or but not limited to a wrap of the original underlying note.

Sellers Initials: _____

14. GOOD AND VALUABLE CONSIDERATION: I acknowledge and fully understand both the receipt and the sufficiency of the consideration as stated on No. 2. Upon the execution of this contract/agreement, consideration is made and accepted by both parties. Buyers pay legal services as consideration as part of consideration for limited scope of this document signed on _7-30-24_

Sellers Initials: _____

15. If seller(s) has any proceeds from the sale, funds shall be held until seller has vacated and buyer has had a chance of thorough property inspection.

Sellers Initials: _____

OTHER AGREEMENTS: No agreements or representation, unless incorporated in the contract, shall be binding upon any of the parties.

Date: _7/30/2024_

_____
Buyer Mentor Capital, LLC.

_____
Seller Signature

_David L Nelson Sr_
Seller Print Name

_214-399-3020_
Phone Number and Email

Revised 09/11/2023

*Exhibit F*

After Recording Return To: Mentor Capital, LLC
9601 McAllister Fwy Suite 1125, San Antonio, TX 78216
210-694-2024

--------------------Above blank space left for recording purposes--------------------

## AFFIDAVIT AND MEMORANDUM OF
## AGREEMENT FOR PURCHASE AND SALE

**STATE OF TEXAS**

**COUNTY OF DALLAS**

BEFORE ME, the undersigned authority, on this day personally appeared the Grantee(s) named below, who being first duly sworn, deposes and says that:

A Purchase and Sale Agreement in the real property described as: **Being Lot 9 In Block 1 Of Creek Crossing Estates No. 5, Phase 11, An Addition to The City of Mesquite, Dallas County, Texas, According to The Plat Recorded in Volume 93133, Page 5689 of The Map Records of Dallas County, Texas,** Commonly Known as: 1213 Sutters Way, Mesquite, TX 75181, was entered into by and between the Affiant/Grantee(s): **Mentor Capital, LLC** (as Buyer), and Grantor(s): **David L. Nelson** (as Seller), **on the 30ᵗʰ day of July, 2024.**

1.  Any interested party may contact: Mentor Capital, LLC whose mailing address is: 9601 McAllister Fwy Suite 1125, San Antonio, TX 78216___, and whose telephone number is 210-262-4808 .

2.  ALL PROSPECTIVE PURCHASES BEWARE; Affiant has binding Purchase and Sale Agreement in the herein described real property by virtue of a properly executed contract. The affiant is ready, willing and able to close this transaction pursuant to the terms of the contract.

Dated this ___30th__ of __July__, 2024.
FURTHER AFFIANT SAYETH NOT.

AFFIANT, _____
Marisa Bretado
Vice President, Mentor Capital, LLC

Sworn to an subscribed before me, the undersigned authority, by __Marisa Bretado____ on this ___30___ day of __July 2024___.

CHRISTIAN NIC GUTIERREZ
Notary ID #134282202
My Commission Expires
March 30, 2027

_____
NOTARY PUBLIC
STATE OF TEXAS

Dallas County
John F. Warren
Dallas County Clerk

Instrument Number: 202400152555

eRecording - Real Property

Recorded On: July 31, 2024 10:16 AM    Number of Pages: 2

" Examined and Charged as Follows: "

Real Recording: $25.00

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | | **Record and Return To:** |
|---|---|---|
| Document Number: | 202400152555 | Simplifile |
| Receipt Number: | 20240730001048 | |
| Recorded Date/Time: | July 31, 2024 10:16 AM | |
| User: | Natasha R | |
| Station: | Cc139 | |



**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX